1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DOUGLAS B. WATKINS,

11          Plaintiff,                    No. CIV S-06-1895 DAD

12          v.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,[1]
14
            Defendant.
15   _____/

16          This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion for summary judgment is granted,

19   the decision of the Commissioner of Social Security (Commissioner) is reversed, and this matter

20   is remanded for further proceedings consistent with this order.

21                        **PROCEDURAL BACKGROUND**

22          On March 3, 2004, plaintiff applied for disability benefits under Title II and for

23   Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act (Act).

24   (Transcript (Tr.) at 53-55, 669-72.)  Plaintiff's applications were denied initially on June 8, 2004

25   _____

26          [1]  Michael J. Astrue has been substituted for Jo Anne B. Barnhart as defendant in this suit
     pursuant to 42 U.S.C. § 405(g) and Fed. R. Civ. P. 25(d)(1).

                                           1

and upon reconsideration on October 26, 2004. (Tr. at 34-35, 39-44, 673-79.) Pursuant to

plaintiff's request for hearing dated December 10, 2004, a hearing was held before an

administrative law judge (ALJ) on November 3, 2005, at which time plaintiff was represented by

counsel and testified. (Tr. at 52, 686-708.) In a decision issued on March 13, 2006, ALJ

Antonio Acevedo-Torres determined that plaintiff was not disabled through that date. (Tr. at 14-

28.) The ALJ entered the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 2005.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's obstructive sleep apnea status postoperative uvolopharyngopalatoplasty [sic[2]], septoplasty and somnoplasty with subsequent maxillomandibular advancement surgery. He has also been assessed with residual lingual nerve dysesthesia and xerostomia, lumbosacral degenerative disc disease with chronic pain and asthma are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> 4. These medically determinable impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 6. The claimant has the residual functional capacity to perform a full range of light work exertionally on a sustained basis with the additional limitations of no frequent bending, climbing, crouching, crawling or stooping. Light work includes the ability to stand, walk and sit for at least six hours in an eight-hour period with regular break opportunities and the ability to lift and carry twenty pounds occasionally

---

[2] See tr. at 278 (referring to plaintiff's "uvulopalatopharyngoplasty") & 276 (referring to plaintiff's "uvulopalatal pharyngoplasty").

and ten pounds frequently. The lifting requirements for the majority of light work can be accomplished with occasional, rather than frequent stooping and bending. (Social Security Ruling 83-10) The claimant should also avoid more than occasional speaking and he should avoid working around temperature extremes, dusts, humidity and fumes.

7.  The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

8.  The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from semi-skilled work previously performed (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform substantially all of the full range of light work (20 CFR §§ 404.1567 and 416.967).

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

13. The claimant's capacity for light work is substantially intact and has not been compromised by any nonexertional limitations. Accordingly, using the above-cited rule(s) as a framework for decision-making, the claimant is not disabled.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

(Tr. at 27-28.)

On May 10, 2006, plaintiff requested review of the ALJ's decision. (Tr. at 9.) The Appeals Council denied his request on June 23, 2006. (Tr. at 5-8.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 23, 2006.

**LEGAL STANDARD**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under the Social Security regulations.  Title 20 of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process can be summarized as follows:

Step one: Is the claimant engaging in substantial gainful activity?
If so, the claimant is found not disabled.  If not, proceed to step two.

4

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is conclusively presumed disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff advances three arguments in his motion for summary judgment. First, he asserts that the ALJ unlawfully rejected the opinions of plaintiff's treating physicians without a legitimate basis. Second, he contends that the ALJ failed to credit plaintiff's own statements as to the nature and extent of his pain and functional limitations. Third, he argues that the ALJ erroneously found him not disabled based on an application of the grids and without the expertise of a vocational expert, despite the presence of extensive non-exertional limitations.

The ALJ found at step two of the sequential evaluation process that plaintiff suffers from multiple severe impairments, consisting of obstructive sleep apnea status postoperative uvulopalatopharyngoplasty, septoplasty and somnoplasty with subsequent maxillomandibular advancement surgery; residual lingual nerve dysesthesia and xerostomia; lumbosacral degenerative disc disease with chronic pain; and asthma. (Tr. at 27.) The ALJ found at steps three and four that these medically determinable impairments do not meet or equal

any listed impairment but that plaintiff is unable to perform any of his past relevant work, which included jobs as restaurant supervisor, manager, and radio announcer. (Tr. at 18, 27.) All of plaintiff's arguments challenge the ALJ's determination at step five that plaintiff has the residual functional capacity to perform substantially the full range of light work and therefore is not disabled. Each argument is addressed below.

## I. The ALJ's Rejection of the Opinions of Treating Physicians

It is well established that the weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). The ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). If a treating professional's opinion is contradicted by an examining professional's opinion that is supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion of a non-examining professional, without other evidence, is an insufficient basis for rejecting the opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

Here, in determining plaintiff's residual functional capacity, the ALJ rejected the opinions of Vincente Carbonell, M.D., who has been plaintiff's primary care physician since November 2003, and instead relied on the opinion of Ethelynda Jaojoco, M.D., a consultative examiner who conducted a neurological evaluation of plaintiff on December 12, 2005, after plaintiff's administrative hearing had been conducted.[3]

The court finds that the record fully supports plaintiff's assertion that he was treated during the relevant time period by Dr. Carbonell at Sacramento County Del Paso Health Center and by Dr. Oide at Sacramento County Dental Clinic, with additional care provided by doctors at Sacramento County Pain Management Clinic and U.C. Davis Medical Center. Plaintiff cites several occasions on which Dr. Carbonell offered his opinion that plaintiff was disabled and unable to work due to chronic severe pain caused by multiple severe impairments.

Dr. Carbonell began treating plaintiff on November 4, 2003, for allergies, asthma, chronic back pain, high blood pressure, headaches, and sleep apnea, as well as for chronic jaw pain, dry mouth, burning tongue, speech problems, and other side effects from oral surgery performed by Dr. Richard Jackson in August 2002. (See tr. at 348-62.) On March 12, 2004, Dr. Carbonell certified for purposes of the state disability insurance program that plaintiff was anticipated to be disabled through August 12, 2004 due to lumbosacral disc disorder, radiculopathy, asthma, and chronic mouth pain. (Tr. at 486-88.)

During the period from March to August 2004, Dr. Carbonell continued to treat plaintiff for low back pain, jaw pain, and asthma. (Tr. at 527-36.) From March through July 2004, plaintiff was also treated for back pain at U.C. Davis Medical Center. (Tr. at 376-77, 383-402, 408-10.) In addition, in May and June 2004, plaintiff was seen in the pain management department at U.C. Davis Medical Center, where he reported that yawning and chewing increased the pain in his jaw, that he could not open his mouth wide enough to eat a sandwich or

_____

[3] Dr. Jaojoco is Board certified in physical medicine and rehabilitation.

7

chew a raw carrot, and that he could not talk or chew for more than 15 minutes. (Tr. at 624-27.) The goals of the physical therapist in the pain management department were to improve the alignment of plaintiff's jaw and increase the size of his mouth opening. (Tr. at 627.) Therapy was subsequently discontinued due to lack of progress. (Tr. at 626.) On August 12, 2004, plaintiff saw a physician at Facial Reconstructive Surgery to discuss the option of further surgery for his sleep apnea; the physician indicated that plaintiff would probably continue to have a chronic pain issue. (Tr. at 372.)

In a supplemental physician's certificate issued on August 17, 2004, Dr. Carbonell certified for purposes of the state disability insurance program that plaintiff was diagnosed with chronic mouth pain, degenerative disk disease, and chronic pain of his back and jaw, and that his disability was expected to continue to November 17, 2004 due to a pending specialty referral and ongoing pain management issues. (Tr. at 485.)

On August 19, 2004, plaintiff was seen in the emergency department of U.C. Davis Medical Center for pain in his left mandible; he was noted to be positive for jaw pain, and the impression was chronic facial pain with acute exacerbation. (Tr. at 374-75, 378-82.) Plaintiff continued to receive ongoing treatment for all of his conditions at the Del Paso Health Center and Sacramento County's pain management clinic from August 2004 through 2005. (Tr. at 505-26, 537-40, 637-56.)

The record contains no further certificates for purposes of state disability insurance because plaintiff's eligibility for state disability benefits expired in 2004. (Pl.'s Mot. for Summ. J. at 46 n.1.) The record shows, however, that treatment for all of plaintiff's medical conditions continued. In November 2004, plaintiff was evaluated at Sacramento County Dental Clinic by Dr. Li, who diagnosed neuropathic pain associated with the tongue and chronic TMJ pain; she determined that no surgical treatment was available to remedy the pain and recommended that plaintiff continue medical treatment for jaw pain. (Tr. at 503.) In April 2005, plaintiff was seen by Dr. Oide in the dental clinic for ongoing left mandibular pain and burning

tongue.  (Tr. at 496.)  In Dr. Oide's opinion, plaintiff's dysesthesia was "likely related to traction-type injury in the setting of his mandibular advancement surgery" and was unlikely to improve.  (Tr. at 497.)  Dr. Oide also diagnosed xerostomia and myofascial pain related to perioperative difficulty with neuromuscular coordination.  (Tr. at 498.)  He found it unclear whether any additional surgical procedure would relieve plaintiff's pain symptoms.  (Id.)  On September 10, 2005, plaintiff was seen at UCSF Medical Center by Dr. Pogrel, who noted that plaintiff's tongue discomfort could well have been caused by stretching of the lingual nerve, which can occur during the type of surgery plaintiff had, and that plaintiff's problems with his bite and limited mouth opening were probably due to scar tissue forming in and around the joints as a result of the surgery.  (Tr. at 542.)  Dr. Pogrel observed that there is no cure for plaintiff's condition.  (Id.)

On February 15, 2006, Dr. Carbonell wrote a report concerning the functional limitations related to plaintiff's jaw problems and his ability to speak.  Dr. Carbonell stated that, in his opinion, plaintiff would be able to speak for no more than 15 minutes.  (Tr. at 668.)  Dr. Carbonell also indicated that he had referred plaintiff to an oral surgeon for further evaluation and treatment of his jaw problems.  (Id.)

On December 12, 2005, plaintiff was evaluated by Dr. Jaojoco.  She reviewed some of plaintiff's medical records, as specified in her report; conducted range of motion tests, as reflected in a two-page attachment to the report; examined and interviewed plaintiff; and completed a form "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."  (Tr. at 657-66.)  She spent over an hour with plaintiff and diagnosed seven medical conditions: (1) obstructive sleep apnea status post uvulopharyngopalatoplasty, septoplasty, and somnoplasty with subsequent maxillomandibular advancement surgery; (2) lingual nerve dysesthesia and xerostomia; (3) lumbosacral degenerative disc disease with no evidence of radiculopathy on examination, although he did have an EMG that reportedly showed left L5 radiculopathy; (4) chronic pain syndrome; (5) hypertension; (6) asthma, well controlled; and (7) GERD.  (Tr. at 658-59.)

1       Dr. Jaojoco's report concludes with the opinion that plaintiff

> is able to stand and/or walk for six hours, and sit without any
> restrictions. He does not require any assistive device. He is able to
> lift and/or carry up to 50 pounds occasionally and 25 pounds
> frequently. The limitation with lifting and carrying is secondary to
> the degenerative disc disease of the lumbar spine. He has postural
> limitations of occasional bending, stooping, crouching, climbing,
> and crawling. He has no manipulative restrictions. He has
> environmental restrictions to no exposure to extremes of heat and
> cold, increased humidity, concentrated fumes, chemicals, and dust,
> secondary to his asthma.

(Tr. at 659-60.) Dr. Jaojoco's separate statement of ability to perform physical work-related activities indicates that plaintiff's non-exertional limitations include (1) postural limitations due to back impairments, (2) communicative limitations due to xerostomia, limited mouth opening, and occasional difficulty enunciating, and (3) environmental limitations due to asthma. (Tr. at 665-66.)

      The medical records conclude, chronologically, with four medical reports created in April 2006. On April 4, 2006, Dr. Oide noted plaintiff's ongoing problems with chronic facial pain and lingual nerve dysesthesia. (Tr. at 13.) On April 18, 2006, Dr. Oide noted that plaintiff had been treated in Sutter Hospital's emergency department for facial swelling and that both he and Dr. Silverman, who saw plaintiff at UCSF Medical Center on April 5, 2006, had noted abnormal centric occlusion. (Tr. at 11.) On April 13, 2006, Dr. Carbonell listed plaintiff's multiple medical problems and stated his opinion that plaintiff "is disabled."[4] (Tr. at 12.) On April 20, 2006, Dr. Riley opined that plaintiff continues to suffer significant disability from his surgery related to obstructive sleep apnea, that he has significant pain, altered range of motion of the jaw, and malocclusion, and that he will continue to suffer long term from his significant

---

[4] An opinion that a claimant is disabled is not a medical opinion as defined in the regulations but rather an opinion on the ultimate issue of disability, which is reserved to the Commissioner. See 20 C.F.R. 404.1527; Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding that a treating physician's opinion is not binding on an ALJ with respect to the ultimate determination of disability); Magallanes, 881 F.2d at 751.

1 disability. (Tr. at 10.) The Appeals Council considered these four reports but denied plaintiff's

2 request for review of the ALJ's decision and therefore rejected the April 2006 reports as

3 irrelevant to the ALJ's decision that plaintiff was not disabled beginning on or before March 13,

4 2006. (Tr. at 5.)

5 In his March 13, 2006 decision, the ALJ adopted Dr. Jaojoco's opinion with the

6 following explanation:

> Given the foregoing evidence, the undersigned afforded significant
> weight to the opinion of the consultative examiner since he [sic]
> had the opportunity to thoroughly examine the claimant as well as
> review the pertinent medical records. (Exhibit 20F [tr. at 657-66])
> As the examiner recommended postural limitations to occasional,
> the undersigned limited the claimant to light exertional work since
> medium work requires the ability to perform stooping, crouching
> and bending on a frequent basis. (Social Security Rulings 83-14
> and 85-15) The undersigned notes the state agency physicians also
> determined the claimant retains the ability to perform light work,
> consistent with the findings of the consultative examiner in this
> case. (Exhibit 8F [tr. at 363-70]) Both the state agency physicians
> and the examiner noted the claimant should avoid frequent
> speaking because of his residual jaw problems and the undersigned
> accepted these conditions. During the consultative examination,
> the claimant had limited ability to open his mouth which
> occasionally affected his enunciation. However, he was
> completely understandable during the evaluation and he did not
> display any difficulties speaking during the hour examination. The
> examiner even noted the claimant was very talkative and provided
> wordy responses to the evaluator. (Exhibit 20F [tr. at 657-66])
> Thus, the undersigned finds a restriction to jobs that require
> occasional speaking would accommodate the claimant's residual
> jaw problems following his multiple surgeries. The undersigned
> finds this determination consistent with the conclusions rendered
> by his treating surgeon who reported in February 2003 the
> claimant's residual complaints of tongue pain, biting of the tongue
> and dry mouth were not debilitating and would not require him to
> be off work. (Exhibit 5F, p. 12 [tr. at 219])

22 (Tr. at 22.)

23 At the conclusion of plaintiff's administrative hearing on November 3, 2005, the

24 ALJ had noted that there was no consultative evaluation in the record and stated that an

25 evaluation by an "[i]nternal medicine CE" would be helpful in determining plaintiff's residual

26 functional capacity. (Tr. at 704, 707.) Both plaintiff and his attorney requested that the

evaluation be performed by a specialist, preferably an oral maxillofacial surgeon familiar with

obstructive adult sleep apnea and maxillomandibular advancements. (Tr. at 705-07.) After

receiving a copy of the opinion rendered by Dr. Jaojoco, who has no expertise in these areas,

plaintiff's counsel sent the ALJ a letter renewing the request for evaluation by a specialist. (Tr.

at 136-37.) In his written decision, the ALJ stated that

> such a referral is not necessary as the claimant's treating physician,
> Dr. Richard Jackson, is a member of the American Board of Oral
> and Maxillofacial Surgery[5] and he already issued an opinion as to
> the permanent limitations caused by the residual side effects from
> the claimant's multiple surgeries. (Exhibit 14E[6]) Dr. Jackson
> opined the claimant's residual symptoms would not interfere with
> his ability to perform work activities. The undersigned also notes
> the claimant has been evaluated by several specialists, including a
> dentist and oral surgeon and none of the physicians issued an
> opinion that the claimant is totally disabled due to his residual
> problems following his surgeries. (Exhibit 9F, p. 2 [tr. at 372];
> 10F, p. 45 [tr. at 417]; 14F, p.4 [tr. at 498] and 17F, p.2 [tr. at 542])
> Thus, the undersigned is giving every benefit of the doubt to the
> claimant in limiting the claimant to occasional speaking because of
> his impairments and since the record contains numerous
> evaluations by specialists, the undersigned did not find another
> referral necessary in order to complete the record.

(Tr. at 22-23.)

> The ALJ also expressly rejected Dr. Carbonell's opinions, stating as follows:

> The undersigned notes that another of the claimant's treating
> physicians reported in January 2006 that the claimant was unable
> to speak for more than fifteen minutes. (Exhibits 21F and 22F [tr.
> at 667-68]) While the undersigned considered this assessment, the
> undersigned finds the opinion inconsistent with the claimant's
> presentation at the consultative examination where he was able to
> speak without difficulty for one hour. In addition, the undersigned
> finds the opinion of Dr. Jackson more persuasive as to the
> claimant's limitations since he is a specialist in oral surgeries and
> Dr. Carbonell is merely a primary care physician. Thus, the
> undersigned finds the opinion provided by Dr. Jackson more

---

[5] According to Dr. Jackson's letterhead, the name of the organization is American Board of Oral Maxillofacial Surgery. (Tr. at 219.)

[6] The ALJ's citation is incorrect. Exhibit 14E is the January 19, 2006 letter in which plaintiff's counsel objected to the consultative examiner's opinion and renewed plaintiff's request for evaluation by the chief of oral and maxillar face surgery at UCSF. (Tr. at 136-37.)

probative and consistent with the remainder of the record indicating the claimant could at least engage in occasional speaking. In addition to Dr. Carbonell's opinion, the record contains several opinions from the claimant's physicians that the claimant was unable to work for periods of time. (Exhibit 13F, pgs. 2, 6, 7 and 8 [tr. at 485, 489-91]) However, these one page forms were completed for the Employment Development Department and only reflect the claimant was disabled for temporary periods. As the one page assessments are merely indicative of temporary periods of disability, these forms were not given any weight in determining the claimant's permanent functional limitations. In summary, the opinion of the claimant's surgeon, the consultative examiner and the state agency physicians all support the determination the claimant retains the ability to engage in occasional speaking or talking. Thus, the totality of the evidence supports a finding the claimant retains the ability to engage in occasional speaking.

(Tr. at 23.)

Dr. Jaojoco saw plaintiff on December 16, 2005 for approximately an hour and reviewed only selected records, most of which concerned treatment for plaintiff's back.[7] (Tr. at 658-59.) The ALJ gave greater weight to this consultative examiner's opinion than to the opinions of any of plaintiff's treating physicians, except for the oral surgeon who performed surgery on August 15, 2002 and saw plaintiff for less than six months thereafter.

The court finds that the ALJ's reasons for rejecting Dr. Carbonell's statements are not legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830; Murray, 722 F.2d at 502. First, the fact that the consultative examiner "had the opportunity to thoroughly examine the claimant as well as review the pertinent medical records" is not a legitimate reason to reject Dr. Carbonell's opinion. At the time of the consultative examination, Dr. Carbonell had been treating plaintiff for several years, had examined him numerous times,

/////

_____

[7] The only records reviewed pertaining to plaintiff's jaw and tongue problems appear to be Dr. Oide's report dated April 13, 2005 (tr. at 496-98), the progress report by a physical therapist at U.C. Davis Medical Center on June 1, 2004 (tr. at 626), the letter to plaintiff from Dr. Pogrel dated September 10, 2005 (tr. at 541-42), and the treatment record by Kasey Li, D.D.S., M.D., on November 16, 2004 (tr. at 503).

and was familiar with his medical records. In contrast, Dr. Jaojoco spent a little over an hour with plaintiff on one occasion and reviewed a few records.

Second, the ALJ's assertion that Dr. Jaojoco's opinion is consistent with the form assessment of a non-examining state agency physician and the affirmance of that assessment by another non-examining physician does not provide a legitimate reason to reject Dr. Carbonell's opinion. The opinions of non-examining professionals, without other evidence, do not provide a sufficient basis for rejecting the opinion of a treating or an examining professional. Lester, 81 F.3d at 831. Here, the form assessment in question was prepared in June 2004, early in the administrative proceedings, for the purpose of assessing plaintiff's physical residual functional capacity relative to his spinal disorder. (Tr. at 363-70.) The non-examining physician made check mark entries regarding exertional, postural, manipulative, and visual limitations, and then marked a box indicating that plaintiff's speaking faculties are limited. (Tr. at 367.) The non-examining physician wrote the cryptic entry "2 - Frequent, not constant" but did not describe how the faculties marked as "limited" were impaired, explain how and why the evidence supported the conclusion, or cite specific facts upon which the conclusion was based. (Tr. at 367.) In the section of the form titled "Symptoms," the non-examining physician merely circled an entry indicating that the severity and duration of the claimant's symptoms were disproportionate to the expected severity or expected duration of the medically determinable impairments but did not discuss this assertion. (Tr. at 368.) This incomplete form assessment is not supported by substantial evidence and does not cover the entire period at issue. The consistency of Dr. Jaojoco's opinion with the opinions of two non-examining physicians does not provide a legitimate reason to reject Dr. Carbonell's opinions.

Third, the ALJ's characterization of Dr. Jackson as plaintiff's "treating physician" and as Dr. Carbonell as merely another treating physician does not provide a legitimate reason to reject Dr. Carbonell's opinion. Dr. Jackson was in fact plaintiff's treating surgeon in 2002, but his role as any kind of treating physician ended on or about February 5, 2003. The court finds it

remarkable that the ALJ describes Dr. Jackson's letter dated February 3, 2003 as "an opinion as to the permanent limitations caused by the residual side effects from the claimant's multiple surgeries," since the letter does not contain either the word "permanent" or the word "limitations" and consists merely of conclusory and self-serving speculation about side effects suffered by plaintiff from surgery performed by Dr. Jackson himself.  Furthermore, Dr. Jackson's speculation regarding side effects suffered by plaintiff in early 2003 appears to be irrelevant to the determination of plaintiff's actual limitations in 2004, when he applied for Social Security disability benefits, and on March 13, 2006, the date of the Commissioner's final decision.  Dr. Jackson's comments in 2003 do not support the ALJ's rejection of Dr. Carbonell's opinions, or the ALJ's conclusion that a restriction to occasional speaking will accommodate all of plaintiff's residual jaw problems, or the ALJ"s finding that it was unnecessary to obtain a consultative examination with a specialist.

Finally, the court finds that the ALJ's characterization of Dr. Carbonell as "merely a primary care physician" and the ALJ's conclusion that Dr. Carbonell's opinions were "inconsistent with the claimant's presentation at the consultative examination where he was able to speak without difficulty for one hour" are contrary to the general rule that more weight should be given to the opinion of a treating source because the treating doctor has a greater opportunity to know and observe the patient as an individual.  See Lester, 81 F.3d at 830; Smolen, 80 F.3d at 1285.  Dr. Carbonell had many opportunities to observe plaintiff, on good days as well as bad, when his medications were effective and when they were not, and when he had been talking for various lengths of time, while Dr. Jaojoco saw plaintiff only once for about an hour.  Moreover, Dr. Jaojoco's own report includes plaintiff's description of his jaw pain as "constant, graded 7/10 on a good day, becoming 9-10/10 on a bad day," "worse with prolonged talking for greater than 15 to 20 minutes," and helped by his medications.  (Tr. at 657.)  When plaintiff stopped speaking several times during the examination and covered his mouth, Dr. Jaojoco assumed, without any explanation for the assumption, that these episodes were caused by nausea rather than jaw or

mouth pain. (Tr. at 658.) Dr. Jaojoco did not ask plaintiff about these episodes, did not ask whether plaintiff was in pain, did not ask plaintiff whether he was having a good day or a bad day with respect to jaw pain, and did not ask him whether he had timed his medication to maximize its effectiveness during an important medical examination. The court finds that Dr. Carbonell's opinions regarding plaintiff's jaw pain and ability to speak are in fact supported by substantial evidence in the record and should not have been rejected on the ground that Dr. Carbonell is "merely a primary care physician."

For all of these reasons, plaintiff argument that the ALJ unlawfully rejected the opinions of plaintiff's treating physicians without a legitimate basis is persuasive.

## II. The ALJ's Failure to Credit Plaintiff's Statements

It is well established that the determination of credibility is a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Questions of credibility and resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. Ordinary techniques of credibility evaluation may be employed, and the adjudicator may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

Nonetheless, an ALJ's decision to reject a claimant's subjective testimony regarding the severity of his symptoms must be supported by specific findings. Morgan, 169 F.3d at 599; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985)). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan, 169 F.3d at 599. The "clear and convincing" standard "is the most demanding required in Social Security cases." Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

1    Once a claimant has presented medical evidence of an underlying impairment, the

2  ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because

3  the symptoms, as opposed to the impairment, are unsupported by objective medical evidence.

4  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789,

5  792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of [his]

6  symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d

7  at 792 (quoting Smolen, 80 F.3d at 1281). Although the ALJ may rely, in part, on his or her own

8  observations, see Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), the ALJ cannot substitute

9  such observations for medical diagnosis, Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir.

10  1990).

11    Here, the ALJ found plaintiff's statements regarding his limitations "not totally

12  credible." (Tr. at 27.) The ALJ offered the following analysis of plaintiff's subjective

13  complaints.

14    In this case, the claimant's subjective complaints of constant and
    debilitating pain were considered but could not be found entirely
15    credible for the following reasons. First, the claimant's level of
    daily activities is not consistent with severe levels of pain and is
16    compatible with at least light exertional work. The claimant
    reported that he is able to complete light household chores, prepare
17    simple foods, drive and volunteer for a non-profit group. (Exhibit
    5E [tr. at 85-80]) The record also indicates the claimant was able
18    to perform part-time work as a videographer and photographer in
    2001. (Exhibit 4F, p. 6 [tr. at 189]) Medical records from
19    September 2002 also relate the claimant was able to take daily
    walks. (Exhibit 5F, p. 27 [tr. at 234]) Given this level of activity,
20    his complaints of severe disabling pain are not supported by the
    evidence of record.
21
    In addition to his activities of daily living, the record documents
22    the claimant has presented only on a few occasions to the
    emergency room in 2004 with complaints of severe pain. The
23    remainder of the record fails to document the claimant appeared in
    acute distress or in severe levels of pain.
24

25  (Tr. at 25.) The ALJ also cited evidence that plaintiff's back pain was alleviated by injections

26  and that his jaw pain "was bearable with his pain medications." (Id.) The ALJ found that

plaintiff's testimony regarding fatigue caused by medications was contradicted by the fact that "he continues to drive and maintain a full schedule of daily activities[,] and physical examinations have failed to demonstrate any signs of fatigue, mental confusion or other noticeable side effects" that would interfere with his ability to perform work activities. (Id.)

The ALJ's assessment of plaintiff's daily activities is not based on a fair assessment of the exhibits cited. For example, Exhibit 5E, is a Daily Activities Questionnaire completed by plaintiff on April 14, 2004, wherein plaintiff described his average day as follows:

> I try to manage the pain the best that I can. It's hard to get restful sleep. Take my medications, try to stretch if pain is not too bad. Rest. Eat. Read newspaper or books. Watch TV. Go to any medical appointments. Try to get by the best that I can. Bed rest during daytime.

(Tr. at 85.) The household chores described by plaintiff are "loading/unloading dishwasher, dusting furniture, self-propelled vacuum." (Tr. at 86.) His food preparation consists merely of reheating prepared foods or microwaveable foods, or he eats food his friends have cooked for him, or he eats take out food. (Id.) His driving consists only of a couple of short trips each week when he needs medications or food. (Tr. at 87.) He does volunteer work for a non-profit group when he has enough strength but has not participated in many community projects since his medical conditions developed because he doesn't have the energy, is easily fatigued, and has difficulty talking. (Tr. at 88.) The part-time work described in Exhibit 4F, which pre-dated the jaw surgery that led to plaintiff's jaw, face, and tongue pain and his difficulties speaking, is not probative with respect to plaintiff's daily activities after the surgery in August 2002. (Tr. at 189.) Exhibit 5F is a medical record from September 2002, a few weeks after plaintiff's jaw surgery and indicates only that plaintiff was "beginning to do daily walks with his wife," without any detail concerning the length or duration of the walks or any indication that plaintiff continued to take daily walks. (Tr. at 234.)

The court is not persuaded by the ALJ's conclusions that plaintiff's pain cannot be very severe because he does not go to emergency rooms frequently and is able to manage his pain

to varying degrees with medication.  The evidence cited by the ALJ does not demonstrate that plaintiff maintains "a full schedule of daily activities" but does show that plaintiff experiences fatigue, mental confusion and other noticeable side effects that would interfere with his ability to perform work activities.  (See tr. at 85-89) (indicating that plaintiff requires bed rest during the day, does not get enough sleep, cannot remember the content of TV shows he watches, has difficulty concentrating on reading for extended periods of time, and lacks energy to participate in community projects).  Plaintiff's testimony at the administrative hearing also supports his statements concerning inability to engage in substantial gainful activity.  (See tr. at 694-96.) Moreover, social security claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603.  See also Webb v. Barnhart, 433 F. 3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

There is no evidence in the record before the court that plaintiff is malingering. Accordingly, the ALJ's reasons for rejecting plaintiff's statements concerning the severity of symptoms must be both clear and convincing.  Plaintiff suffers from multiple impairments that may cause pain and therefore the ALJ may not discredit plaintiff's statements with respect to the severity of his symptoms merely because there is no objective medical evidence regarding severity of pain.

The reasons offered by the ALJ for finding plaintiff's statements "not totally credible" are unconvincing.  The objective medical evidence overwhelmingly demonstrates that plaintiff suffers from conditions that may reasonably be expected to cause severe symptoms of pain as well as substantial limitations on the ability to work.  In the absence of specific, clear and convincing reasons for rejecting plaintiff's statements regarding the severity of his pain and his

/////

speech difficulties, the court finds plaintiff's argument that the ALJ failed to properly credit his

statements as to the nature and extent of his pain and functional limitations to be persuasive.

**III.  The ALJ's Reliance on the Grids Despite Plaintiff's Non-Exertional Symptoms**

"When a claimant's nonexertional limitations are 'sufficiently severe' so as to

significantly limit the range of work permitted by the claimant's exertional limitations, the grids

are inapplicable. . . .  In such instances, the Secretary must take the testimony of a vocational

expert and identify specific jobs within the claimant's capabilities."  Burkhart, 856 F.2d at 1340

(quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 578 (9th Cir. 1988), and

citing Jones, 760 F.2d at 998).  See also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983);

Tackett, 180 F.3d at 1101-02.

Here, the ALJ determined that plaintiff has the residual functional capacity to

perform "substantially all of the full range of light work" and found that plaintiff's capacity for

such work "has not been compromised by any nonexertional limitations."  (Tr. at 28.)  The ALJ

applied Medical-Vocational Rule 202.21 as a framework for decisionmaking with regard to

plaintiff's ability to perform other types of work.  (Id.)  The rule applies to claimants whose

residual functional capacity is limited to light work as a result of severe medically determinable

impairments and leads to a decision of not disabled for a younger individual whose education is

high school graduate or more, and whose previous work experience is skilled or semiskilled but

whose skills are not transferable.

Rule 202.21 does not accurately and completely describe plaintiff's abilities and

limitations because his capacity to work has been compromised by significant nonexertional

limitations, which include severe, chronic pain that arises from multiple impairments, speech

difficulties, postural restrictions, and environmental issues.  Substantial evidence in the record

demonstrates that plaintiff's nonexertional limitations significantly diminish his ability to work.

Vocational testimony was therefore required.  Plaintiff's argument that the ALJ erroneously

relied on the grids despite plaintiff's significant nonexertional limitations is also persuasive.

## CONCLUSION

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, the ALJ failed to give adequate reasons for rejecting the treating physician's opinions and plaintiff's statements regarding the severity of his symptoms and limitations. However, the court finds that the record has not been adequately developed such that the court can find plaintiff disabled simply by crediting his testimony and the opinions of his treating physician.  It is necessary to remand the case for additional findings.

On remand, the ALJ must obtain a consultative examination by Dr. Anthony Pogrel, Chief of Oral and Maxillar Face Surgery at UCSF, or a physician with similar qualifications.  The ALJ must then re-determine plaintiff's residual functional capacity, giving proper weight to the medical opinions of treating physician Dr. Carbonell.[8]  On remand, the ALJ must also give proper credit to the statements of plaintiff regarding the severity of his symptoms. If plaintiff is found to have the residual functional capacity to perform other work, the ALJ must hold a hearing and take the testimony of a vocational expert to determine whether plaintiff is

---

[8] A treating physician's opinion as to the combined impact of his patient's limitations is entitled to special weight because "an integral part of the treating physician's role is to take into account all the available information regarding all of his patient's impairments–including the findings and opinions of other experts," and the treating physician's continuing relationship with his patient makes the treating physician uniquely qualified to form an overall conclusion as to the patient's functional capacities and limitations.  Lester, 81 F.3d at 833.

capable of performing other jobs that exist in substantial numbers in the national economy. <u>See</u>

<u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001). The expert must be questioned in a

manner that properly takes into account all of plaintiff's nonexertional limitations. <u>See</u> <u>Moisa v.</u>

<u>Barnhart</u>, 367 F.3d 882, 887 (9th Cir. 2004); <u>Tackett</u>, 180 F.3d at 1103-04.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 19) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 20) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded for further proceedings consistent with the analysis set

forth herein. <u>See</u> 42 U.S.C. § 405(g), Sentence Four.

DATED: March 16, 2009.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/watkins1895.order

22